## Nebel Estate

*Harry J. Alker, Jr.* and *Hyman A. Guth,* for accountant.

*Dallas S. Townsend, W. Wilson White, James D. Hill, Irving Jaffe,* and *David Moses,* for United States.

TAXIS, P. J., July 26, 1955.—The account of Fred C. Gartner, surviving testamentary trustee, of income for the year 1954, was examined and audited by the court on June 10, 1955.

The reason or purpose of the filing of the account now before the court, which was filed under the provisions of the Act of August 10, 1951, P. L. 1163, §702, 20 PS §2080, is to have determined a question of distribution. The account shows a balance for distribution of $8,758.69.

E. Oscar Nebel, this testator, died on August 5, 1934, having bequeathed his residuary estate to trustees with directions to pay the net income therefrom semiannually to his three children, in equal shares, with remainders to their surviving children equally per stirpes. The will contains a spendthrift clause in paragraph four which reads, in parts pertinent, as follows: "All distributions, however, to be free and clear of his or her debts, contracts, engagements, and anticipations, and free and clear of all levies, attachments, executions, and sequestrations."

Fritz Nebel, a son of testator, resides in Germany. By Vesting Order No. 1277, dated April 20, 1943, the Alien Property Custodian found and determined that Fritz Nebel and the children of Fritz Nebel were nationals and residents of an alien country, Germany, and seized "all right, title, interest, and claim of any kind or character whatsoever of Fritz Nebel and the child or children, names unknown, of Fritz Nebel, and each of them in and to the trust created under the will

of E. Oscar Nebel, deceased." Thereafter, and until January 6, 1954, the trustee semiannually remitted Fritz Nebel's share of income to the Office of the Alien Property Custodian in accordance with the vesting order, representing income earned to December 31, 1953.

The matter now comes before the court on an account filed pursuant to section 702 of the Orphans' Court Act of 1951. The account is an accounting of the income only, for the year 1954 and the question is whether the trustees should pay this 1954 income to the Office of Alien Property Custodian as heretofore or whether, as the trustees contend, the Joint Resolution of Congress, dated October 19, 1951, terminates the custodian's right to receive income payments.

The Joint Resolution of Congress of October, 1951, 65 Stat. at L. 451, 50 U. S. C. App. §1, terminated the war between the United States and Germany. It contained the following proviso: "That notwithstanding this resolution and any proclamation issued by the President pursuant thereto, any property or interest which prior to January 1, 1947, was subject to vesting or seizure under the provisions of the Trading with the Enemy Act of October 6, 1917 (40 Stat. 411), as amended, or which has heretofore been vested or seized under that Act, including accruals to or proceeds of any such property or interests, shall continue to be subject to the provisions of that Act in the same manner and to the same extent as if this resolution had not been adopted and such proclamation had not been issued. Nothing herein and nothing in such proclamation shall alter the status, as it existed immediately prior hereto, under that Act, of Germany or of any person with respect to any such property or interest."

The effect of the Joint Resolution on property vested before October, 1951, was considered in Brownell v.

Schering Corporation, 129 F. Supp. 879, 894. Hartshorne, J., had this to say: "Congress in so many words said 'that notwithstanding this resolution . . . any property or interest which prior to January 1, 1947, was subject to vesting or seizure under the provisions of the Trading With the Enemy Act . . . or which has heretofore been vested or seized under that Act, including accruals to or proceeds of any such property or interests, shall continue to be subject to the provisions of that Act in the same manner and to the same extent as if this resolution had not been adopted.' In other words, the resolution and the President's Proclamation in that regard have no effect whatever as to (1) 'any property or interest' which might have been, but was not, subject to vesting or seizure under the act prior to such date, 'including accruals to or proceeds of any such property or interest', or as to (2) 'any property or interest' which had been vested or seized under the act 'including accruals to or proceeds of' same. Then, to make assurance doubly sure, the resolution further provided that no person's status prior to the resolution, with respect to any of the property or interests above described, including accruals or proceeds, should be altered by the resolution or proclamation, from what it had been before the resolution."

It is clear that the "property or interest" of Fritz Nebel "was subject to vesting or seizure" and in fact had been vested by the Order of April 20, 1943. I hold, therefore, that by the express language of the Joint Resolution itself, the property of this trust was excluded from the operation of the Joint Resolution and, therefore, the vesting continued uninterrupted and undisturbed by such Joint Resolution.

The trustees contend that the Government could not seize income which accrued after the Joint Resolution, for the reason that, in a spendthrift trust, the

income beneficiary takes a vested interest in income *when he actually receives such income* and not before. They rely upon Heyl Estate, 352 Pa. 407. That case, however, is clearly distinguishable from the present situation. In the Heyl case, testator made it a condition precedent to the vesting of any beneficial interest in the income that the *cestui que trust* actually receive and receipt for such income. Justice Drew stated:

"Testator most explicitly provided not only that the net income shall be paid to the beneficiary directly and personally and upon his or her own personal receipt, but also that such income 'shall only become and be the property of the beneficiary when actually received by him or her, and the trustees shall only be discharged of the same, upon the own proper receipt of the beneficiary.' Under such circumstances, the trust income remains the property of the testator until it is actually paid to the beneficiary."

No such condition to beneficial ownership by the cestui que is annexed to the gift of the income contained in the Nebel will here under consideration. Fritz Nebel's interest in this trust vested when the trust was created, viz. 1934. "The interest of a life tenant is vested when a decedent or settlor *creates the trust*": Warden Trust, 5 Fiduc. Rep. 393, 395 decided June 27, 1955; Crawford Estate, 362 Pa. 458, 460.

The A. L. I. Restatement of the Law of Trusts, §157 Comment (c) provides as follows: "Alien enemies. If a federal statute provides that an officer of the United States shall seize all property within the United States belonging to alien enemies, this officer is entitled to seize the interest of a beneficiary of a trust although the trust is a spendthrift trust."

The right to receive the payments of income was created in 1934, and relates back to that time. Fritz Nebel had nothing new or additional in 1954 which

he did not already own in 1934. When the Alien Property Custodian seized that interest in 1943 he took the entire interest that Fritz had in the trust, namely, the income payable semiannually so long as Fritz lives.

The balance for distribution as shown by the account is, therefore, awarded to the Alien Property Custodian.

The transfer inheritance tax has been paid.

The account is confirmed, and it is ordered and decreed that Fred C. Gartner, surviving testamentary trustee, as aforesaid, forthwith pay the distribution herein awarded.

And now, July 26, 1955, this adjudication is confirmed nisi.