## Loughlin's Estate.

*Loughlin & Woolford,* for petitioner.

SINKLER, J., Jan. 2, 1931.—Mary E. Loughlin died March 23, 1929, leaving a will dated July 1, 1921, and three codicils thereto. Clause 12 of the will appointed her husband, Henry C. Loughlin, executor; if he be deceased, her brothers, James J. McEvoy and Thomas A. McEvoy; if they both be deceased, John K. Loughlin; and if he be deceased, the Continental-Equitable Title and Trust Company. Clause 11 of the will gives her executors power to sell real

estate at public or private sale for such prices as to him [sic] shall seem proper, without liability on the part of the purchaser or purchasers to see to the application of the purchase money. Clause 1 of the will gives to her husband, Henry C. Loughlin, all of her estate. Clause 2 and subsequent clauses provide for the contingency of her husband dying before her. Clause 9 of the will is as follows: "All the rest, residue and remainder of my property and estate I give, devise and bequeath unto John K. Loughlin, son of William H. Loughlin, and the Continental-Equitable Title and Trust Company in trust" for the purposes therein set forth. No power of sale is given to the trustees. Neither the second nor the third codicil makes any changes in the executors, trustees or the powers given to them. None of the three codicils makes any change in the residuary clause.

Testatrix's husband died before her. On April 11, 1929, the will and codicils were duly admitted to probate and letters testamentary were granted to James J. McEvoy. The executor filed his account and the same was duly adjudicated by this court on June 5, 1930. On Nov. 8, 1930, he filed his petition, reciting that on April 16, 1930, he had entered into an agreement of sale with Bessie Blasi for the sale to her of a lot of ground in the City of Philadelphia for $1800; that this agreement was made in reliance on the power of sale contained in the eleventh clause of the will; that the title company to which the purchaser made application for title insurance had questioned the right of the executor to convey in accordance with the contract of sale, because one year had elapsed after the death of the testatrix. It concludes with a prayer that the court enter a declaratory judgment declaring that the power of sale vested in the executors did not terminate at the expiration of one year from death, but was intended by the testatrix to continue in her executors until the final disposition of her real estate. John K. Loughlin and the Continental-Equitable Title and Trust Company, trustees under the will of said Mary E. Loughlin, and Bessie Blasi, the purchaser of the tract in question, have acknowledged notice of the facts stated in the petition and join in the prayer thereof. No answer has been filed. At the argument before the court in banc, the petitioner was represented by John K. Loughlin as counsel, and the purchaser did not appear either in person or by counsel.

The brief of argument contains a short quotation from Crozer v. Green, 298 Pa. 438, but gives no recital of the facts. Crozer appointed three individuals executors of his estate, and gave them a power of sale of real estate. He appointed the same three individuals and a trust company as trustees of his estate, but did not give his trustees a power of sale. The executors entered into a contract for the sale of certain real estate belonging to the decedent and brought an action of assumpsit for the purchase money in the Common Pleas Court, which gave a judgment for the plaintiff for want of a sufficient affidavit of defense. This was affirmed by the Supreme Court.

While this case seems to be in point as to the survival of the power of sale given to the executors, the further question must be decided as to whether this court should, under the existing conditions, make the decree prayed for, the decision relied upon by the petitioner being upon an appeal taken from an action in the Common Pleas Court and not upon a declaratory judgment. There is no discussion of this subject in the brief of the petitioner, and no cases are cited by him. It is necessary for us to determine the propriety of entering such a judgment upon the authority of the cases heretofore decided.

There are many reported decisions, both of the appellate courts of this state and of the county courts. The latest decision of the Supreme Court is Cryan's Estate, 301 Pa. 386. The illuminating opinion of Chief Justice von Mosch-

zisker renders it unnecessary for us to make any extensive review of the earlier cases. He cites at length the act itself, refers to all the reported cases of the appellate courts construing the act, and discusses some of them at length. He points out that the early decisions on the subject decided that relief can be given only in cases where an actual controversy exists or is imminent. Had this not been so ruled, the Uniform Declaratory Judgments Act "must have been held unconstitutional as a legislative effort to turn the courts from tribunals organized to determine controversies judicially into those for the giving of legal advice, a function not contemplated by our organic law." He further points out the extreme view taken by some other jurisdictions. The Federal courts "cannot conceive of declaratory judgments as other than merely advisory judgments, and, therefore, unconstitutional."

In addition to the general principle that a real controversy must exist, there is a second which has been repeatedly laid down in the decisions, that a declaratory judgment cannot be properly given where an established and adequate remedy exists.

As to the first principle, a number of cases of our appellate courts decide that a real controversy means one in existence or where there are ripening seeds thereof, and not a matter which is merely moot or academic. We are of the opinion that the term "real controversy" is properly to be construed in these cases as having another meaning also, that is, actual and antagonistic controversy. In Duff's Estate, 4 D. & C. 315, the first case which came before our court, we, in an opinion by Gest, J., refused the petition on the ground, *inter alia*, that there was no actual conflict. In Cryan's Estate, *supra*, we find these words: "The pleadings show antagonistic claims between parties entitled to property. . . ." We are aware that in the last reported case of this court, Paine's Estate, 13 D. & C. 629, a declaratory judgment was granted in an *ex parte* proceeding. On examining the opinion of Gest, J., it is apparent that he felt compelled to grant the petition because of decisions of the Supreme Court in the following cases: B'Nai B'Rith Orphanage v. Roberts, 284 Pa. 26; Kariher's Petition, 284 Pa. 455; and Kidd's Estate, 293 Pa. 21; although, in his own judgment, the relief should not have been granted. In the present case, although the trustees of the estate and the prospective purchaser have joined in the prayer of the petition, the proceeding is in effect an *ex parte* one, and there is no real controversy in the sense that there are no antagonistic claims revealed in the record.

The second principle frequently pronounced in the decisions construing the act is that a declaratory judgment will not be entered where there is an adequate remedy at law. An illustration of the application of this principle is to be found in Dempsey's Estate, 288 Pa. 458. This was an appeal from exceptions dismissing a master's report in Philadelphia County. From the decision in the Supreme Court, it appears that the petition filed with the lower court asked relief under the Uniform Declaratory Judgments Act, and also related to the duty to file an account. On examining the decree of the Orphans' Court, nothing is found in relation to the declaratory judgment, but the Supreme Court holds that the petition under the Uniform Declaratory Judgments Act should have been dismissed, since all that was sought thereby could have been obtained as speedily and effectively in a proceeding to compel an account. The decree of the court below, so far as relates to the duty of filing an account, was confirmed.

In Sterrett's Estate, 300 Pa. 116, a declaratory judgment entered by the court below was reversed on the ground not only that there was no actual controversy but because the court has uniformly ruled that relief will not be

granted in this manner where another established remedy is available. In his penultimate opinion on the subject of declaratory judgments, the learned Chief Justice concludes: "We are determined that the Declaratory Judgments Act, an excellent piece of legislation when kept within proper bounds, shall not be used in cases to which it is not properly applicable."

In the present case an existing remedy is available. The petitioner may, if he choose, take the action which was availed of in Crozer *v.* Green, *supra,* which he cites to us. There are other existing legal remedies to which he may resort.

Section 6 of the Uniform Declaratory Judgments Act is headed "discretionary." The discretion is limited, in that the act provides that the court may refuse to enter a declaratory judgment where it would not terminate the uncertainty or controversy giving rise to the proceeding. In the present case we are of the opinion that the uncertainty would not be terminated in the proceeding which the petitioner has elected to pursue, and that we should refuse to enter the declaratory judgment.

There does exist in the present case a real controversy, in the sense that there is a state of affairs actually existent. But we consider that the petition should be dismissed for the two reasons just stated; first, that an existing remedy is available; and, second, because a declaratory judgment would not terminate the uncertainty. The petition is, therefore, dismissed.