Crozer Estate.

Argued January 13, 1943. Before MAXEY, C. J.; DREW, LINN, STERN, PATTERSON, PARKER and STEARNE, JJ.

*Vincent P. Desmond,* with him *Alex J. McCloskey, Jr.,* for appellant.

*John Arthur Brown* and *Robert T. McCracken,* with them *Howard M. Lutz, D. Alexander Wieland, Joseph J. Brown* and *Benjamin Ludlow,* for appellees.

OPINION BY MR. JUSTICE ALLEN M. STEARNE, March 22, 1943:

The single question raised by this appeal is whether the learned auditing judge has correctly allocated principal and income in a trust estate.

Testator died in 1926, and by his Will created a trust to pay income to his widow, children and grandchildren. See *Crozer et al. v. Green,* 298 Pa. 438; *Crozer's Estate,* 336 Pa. 266; *id.,* 342 Pa. 71. According to the statement of the case, in conformity with Rule 56 of this court, the only record before us, there have been five accounts and three supplemental accounts filed. The accounting covers a period from 1928 to 1942. The estate is large. There appears to be presently over $3,000,000. in the principal account, and there are numerous pieces of real estate. Proceeds from the sales of real estate previously sold

have been accounted for in the accounts prior to the fourth and fifth. As the fifth account was filed after the fourth account, and before its audit, we are assuming that the court regarded the fifth account as supplemental to the fourth. It is the fourth and fifth accounts which are now the subject of the present litigation.

It appears in the statement of the case that certain portions of the real estate which have heretofore been sold, and certain other portions which are retained, were derived by the trustees from foreclosure of mortgages. Other real estate is what has been designated as "decedent owned". Since 1927 an income deficit of $197,786.18 has accumulated, because of the carrying charges on various pieces of unimproved real estate. The learned auditing judge, considering the life tenants entitled to relief, "re-allocated" from principal to income the proceeds from the sale of a portion of real estate acquired on foreclosure, appearing as principal in the supplemental account for 1937 and 1938. They total $7,000. Proceeds, totalling $1,874.25 from the sale of a piece of decedent-owned real estate allocated to principal in the same supplemental account, were similarly "re-allocated" to income. The auditing judge also directed that proceeds of $1,998. from the sale of another decedent-owned property appearing in the fourth account, should be re-allocated from principal to income. These items, totalling $10,-872.25 were ordered to be paid to the life tenants. The reason assigned was that the proceeds were received "within the five-year period within which an adjudication may be reconsidered". All of the prior adjudications had been confirmed absolutely, and no petitions for review were granted. Furthermore, the auditing judge appears to have concluded, if we understand the record correctly, that fifty percent of all *future* sales of real estate should be allocated to income until the overdraft be reduced by one-half. It does not appear in the record before us how that conclusion was reached or by what it is supported.

We cannot sustain the decree confirming the adjudication. At the outset, it is clear that an account confirmed absolutely may not be disturbed, even within five years, except by a petition for review: Fiduciaries Act of 1917, P. L. 447, Section 48, 20 PS 843; *Osterling's Estate,* 337 Pa. 225, *Slagle's Estate,* 335 Pa. 552, *Elkins's Estate,* 325 Pa. 373, *Stetson's Estate,* 305 Pa. 62. Since the adjudication of the third account and its supplements had become absolute, and thus placed the proceeds of sale of the real estate sold during 1937 and 1938 into principal, such determination may not now be overthrown, except through the orderly statutory procedure above indicated. While language in those adjudications, which are not printed and from which we have only short extracts, may have been intended to reserve the right to re-allocate some of these proceeds in a future accounting, the present record does not make it clear.

It is true that if upon the re-audit of the accounts now before us, it becomes necessary to invade principal in aid of income, the particular proceeds from the sale of real estate in question *could* be used for such purpose, as could any other principal in the trust estate. But that is quite a different thing from re-allocating, without review, principal and income in prior accounts, the confirmations of which have become absolute.

Our principal objection to the decree of the court below, however, relates to substance and not merely to procedure. Because some of the real estate was obtained through foreclosure, the sale thereof involves a *salvage operation. Nirdlinger's Estate No. 2,* 327 Pa. 171, and *Nirdlinger's Estate,* 331 Pa. 135, prescribe the precise methods to be adopted for allocation of proceeds and carrying charges. We will not again repeat what has been written in those cases. Where, however, the real estate is "decedent owned", and unproductive, an entirely different rule prevails. This is prescribed by *Levy's Estate,* 333 Pa. 440. In the latter situation, upon proven or agreed facts, an auditing judge has the dis-

cretion, considering the equities of the case, to determine in what proportions the life tenants and the remaindermen shall bear the carrying charges. Relief to life tenants may be given in advance of sale. *Each property,* however, must be separately regarded and treated. Consideration may not be given to the real estate as a whole. The exercise of discretion must be upon the *facts and circumstances relating to each separate piece of real estate.* There is nothing in the record which discloses how, or in what circumstances, or with respect to which properties, the apportionment of these proceeds was made. Appellant is entitled to a supporting record.

It must also be said that if the court's decree was intended directly or indirectly *now* to define the allocation of the proceeds of real estate to be followed in *future* accounting, it is open to the objection that future accounts are not now before the court, and therefore, not now subject to final disposition in the respect intended.

The decree is reversed, and the record is remitted to the Orphans' Court for such further proceedings, in accordance with this opinion, as the court may deem proper. Costs to be paid out of the principal of the estate.