## Powers' Estate

Before Van Dusen, P. J., Sinkler, Klein, Bolger, Ladner, and Hunter, JJ.

*Eric A. McCouch, Leslie W. Swope* and *Charles J. Biddle,* for exceptants.

*Cuthbert H. Latta* and *Charles Myers,* contra.

HUNTER, J., April 18, 1947.—The adjudication made an allowance to the trustee of commissions of three percent, $177,255.82, on proceeds of real estate, $5,908,527.13, to which exceptions have been filed by Thomas Harris Powers and Henry Frazer Harris, two

of the life tenants, who contend that such allowance should be postponed until the termination of the trust.

Testator died November 20, 1878, and by his will and codicils gave the income of his residuary estate to his widow and daughter with power in each to make a testamentary appointment of one third of the residuary personal estate. The widow died in 1895 and daughter in 1921, and each exercised her power of appointment.

By the terms of the will, the balance of the estate, including all of testator's real estate, continued in trust for the three sons of the daughter, Thomas Harris Powers, Alan Campbell Harris and Henry Frazer Harris during the full term of 21 years after the death of the last survivor of said sons who were living at the time of testator's decease (Thomas Harris Powers and Alan Campbell Harris were then living), with provision that if any shall die leaving a wife him surviving and shall not have made provision by will for her, the trustees shall pay over to said wife for life such proportion of the net income of the share vested in her deceased husband as would have been due and payable to such wife if he had died intestate.

Alan Campbell Harris died June 4, 1941, leaving a widow, Elsa Truemann Harris, and her rights in the estate of her husband and in this estate were determined and settled by the Supreme Court in Harris Estate, 351 Pa. 368, and in subsequent proceedings in the court of common pleas and this court.

The trustee has managed and operated the real estate and the proceeds thereof since 1878, a period of 67 years, and the trust will continue for some years to come. It may be that the grandsons, life tenants, have a vested interest in the principal of the trust under the terms of the will, but that need not be determined at this time.

The trustee was one of three executors and received commissions of $22,940.20 on personal estate, being one

third of two percent on $3,000,000 of assets. No compensation has ever been paid on the proceeds of real estate. The trustee has charged commissions on income from personalty at 2½ percent, on rents of realty at 5 percent, and at 2½ percent on income from the reinvested proceeds. This was an average rate of 3.37 percent on all income.

There was no appraisement made of the real estate at the death of testator, there being no inheritance taxes to be paid. It had been conveyed to testator by 68 deeds, most of which bear dates evidencing execution within 10 years preceding his death, and the total consideration recited therein is $1,010,093.96. All has been sold by the trustee, with the exception of one parcel for which testator paid $27,500. The total consideration was $7,088,777.13. In calculating its claim for commissions, the trustee has eliminated mortgages and ground rents taken as part of the purchase price, and bases its claim upon cash consideration of $5,908,-527.13.

The leading case upon the time for allowance of trustees' commissions is Bosler's Estate, 161 Pa. 457, which is based upon an earlier decision in Mintzer's Estate, 18 Phila. 97, affirmed 6 Sadler 97, 9 Atl. 66. The rule there stated is that a trustee is not entitled to commissions on the principal of an estate until the trust expires, or the particular trustee's relation to it ends. This rule is repeated and confirmed in the late case of Snyder Estate, 346 Pa. 615.

In its general application, it is based on the principle that commissions are payable only when the estate, principal or income is in the course of distribution; otherwise it is not possible to estimate the duration of a trust, or the time that a trustee will remain in office, and should the trustee die or resign, a succession of trustees may be called to its management whose compensation would absorb the estate.

The rule is not inflexible and will be departed from in justice to a trustee where there are circumstances of an unusual and extraordinary character, and the trustee has increased the estate by great care and skill: Thouron's Estate, 182 Pa. 126; Penn-Gaskell's Estate, 208 Pa. 342; McCaskey's Estate, 307 Pa. 172; Conner's Estate, 21 Dist. R. 107.

In Thouron's Estate, supra, the facts are recited in the opinions of the lower court reported in 6 Dist. R. 166, and of the Supreme Court on appeal. The trustee had served for 16 years, and for 11 years had charged no commissions even on the income, and what he had received in compensation amounted to but 1⅝ percent on income. He was not executor and received no commissions in that capacity. The estate increased under his management from $60,000 to $350,000. Four out of five cestuis que trust approved his compensation, which was allowed in the sum of $7,500.

In Penn-Gaskell's Estate, supra, decedent died in 1865 leaving a farm estimated as worth $25,000. In 1880 and 1883 parts were sold under the Price Act to a railroad company which was about to take under right of eminent domain, and the remainder was sold in 1888. The aggregate amount of the proceeds was $116,000, which was further increased after a reinvestment of the proceeds. An allowance of 2½ percent was made on the money realized from the sale. The court referred to the fivefold increase in the value of the estate, and said (p. 345):

"Moreover, the services for which commissions were claimed, the sale of the farm, were completed. If they had been performed by an executor who was also a trustee, compensation would have been allowed him. The claim was not for ordinary care and management of an estate but for sales made not under a power in the will but by direction of the court. The duty was fully performed when the conversion was completed,

and under the circumstances of this case the credit should have been allowed."

In Conner's Estate, supra, three percent was allowed on the proceeds of real estate which had been taken by the city for parkway purposes. After seven years of litigation negotiations resulted in a recovery of $30,000, which was an increase of $13,000 over an assessment of $17,000.

Returning to the case which is now before the court, the learned auditing judge expressed the opinion that the unusual or special character of the trustee's services was more marked in the cited cases than in the instant case, but nevertheless found that the facts brought it within the exception which permits the award of commissions on principal prior to the termination of the trust.

This has been a well-managed trust, and has been conducted with a minimum of expense to the parties. Commissions on income have been moderate, and the trustee itself found purchasers for 87 percent in value of the real estate without the expense of brokers' commissions. The estate has greatly increased in value over that at the time of testator's death.

We must assume from the location of the real estate that a substantial part of the increase was due to the natural growth of city values, but there can be no doubt of the excellent judgment and skill of the trustee who retained the real estate during the early years of the trust and sold after a wide increase in values and before the recent depression.

A natural enhancement in the value of real estate does not justify the allowance of special compensation to a trustee: Brennan's Estate, 215 Pa. 272. Exceptional care and skill by a trustee does justify such an allowance. Both elements are present in the instant case.

The further objection is made by life tenants that the confirmation of the previous accounts of the trustee,

especially the account filed in 1922 at the death of the daughter, without claim for commissions, is a bar to a special allowance for services which were performed and completed before such accounts were filed.

In reply, the trustee points out that no harm has been done in delaying the claim, and in fact there has been a benefit to life tenants in that they received income on the invested amount of the commissions; that it is not a "stale" claim because if it is postponed until the termination of the trust it will still be necessary to review the early years of the trust, and the difficulties of establishing the claim and defending against it will be even greater.

Since the close of the last account in 1921, sales of real estate have been made in the amount of $2,817,-487.91, which includes a purchase-money ground rent of $1,150,000 subsequently foreclosed, so that the cash proceeds were $1,667,487.91. Commissions at three percent upon the latter sum would be $50,024.64.

Confirmation of an account is conclusive not only as to matters that actually were raised, but all that were legally included, and therefore might have been raised under it: Helfenstein's Estate, 135 Pa. 293; Elkins' Estate, 325 Pa. 373; Forsyth's Estate, 335 Pa. 281; Crozer Estate, 346 Pa. 446. None of these cases involved commissions in a continuing trust, and the principle there stated has not been applied expressly to a claim for special commissions before the termination of a trust so far as research shows, other than in an adjudication by the writer of this opinion in the Estate of George H. Earle, Jr., Deceased, as of no. 3442, October term, 1929, where commissions were denied, to which no exceptions were filed for consideration of the court en banc.

The question was inferentially before the court in Thouron's Estate, 182 Pa. 126, supra. The trustee was appointed in 1880, and accounts were confirmed in 1882, 1891 and 1892. The accounting at which commissions were claimed was filed in 1896, and it was

recited that "in this account large additions were made to the bulk of the fund". We must assume, because the decision was favorable to the allowance of commissions, that had the question of confirmation of accounts been raised the court would have replied that such confirmation was not an absolute bar to the allowance of commissions.

Notwithstanding the implications of Thouron's Estate, we believe some finality should be given to the confirmation of an account on the question of commissions, and in a claim of this kind we must be convinced that there was a settled intention to make the claim at the completion of the work and that it is not brought forward as an afterthought.

Perhaps the time has come when the rules postponing a trustee's compensation should be relaxed in sales of real estate, as intimated in Penn-Gaskell's Estate, 208 Pa. 342, supra. Unlike most cases of personal property, it is possible to make an immediate appraisement of the work and responsibility of a trustee in making a sale of real estate, apart from his subsequent duties of reinvestment, management and distribution. For this work and responsibility an immediate allowance could be made and treated as a payment on account. In any event, full commissions should not be allowed, because the trustee may resign, die or be dissolved before the work for which he was paid is completed.

Where the same person is both executor and trustee, and may sell in either capacity, there is a temptation to rush into a conversion as executor and obtain immediate commissions. See Penn-Gaskell's Estate, supra; Hoxie's Estate, 3 Dist. R. 296.

The trustee may be an individual whose death must occur before the termination of the trust, and who cannot while living enjoy the reward of his labor: McCaskey's Estate, 307 Pa. 172.

We are without authority, as the rules are now stated, to make a distinction between the real and per-

sonal property of a trust, and immediate allowance of compensation can be made only in unusual and exceptional cases.

We have given considerable thought to the merits of the trustee's claim, and to the rights of the beneficiaries against it. It is an exceptional case and one where some immediate payment should be made to the trustee. If payment is denied at this audit, considerable time must elapse before the termination of the trust. On the other hand, we concur in the findings of the auditing judge that the special services of the trustee were more marked in the decided cases than in this one. The claim is belated because the trustee passed by the confirmation of an account which contained the bulk of the real estate.

We conclude in right and justice that an immediate allowance of $100,000 be made to the trustee as a payment on account of its compensation which will be finally determined at the termination of the trust.

Exceptions have also been filed to the allowance of a fee of $7,000 to counsel for the trustee for services relating to the allowance of commissions. The auditing judge found, upon the analogy that a fiduciary is entitled to fees for successfully defending him against a surcharge, that the trustee was entitled to the services of counsel made necessary in establishing the right to commissions.

In our opinion the burden was on the trustee to establish the exceptional and unusual facts which justified the special allowance of compensation, and that no fee should be paid to counsel beyond the fee for general services, credit for which is taken in the account.

Exceptions nos. 2, 3, 4, 8, 9, 10 (all other exceptions having been withdrawn) of Thomas Harris Powers and Henry Frazer Harris are sustained to the extent indicated by this opinion, and adjudication as modified is confirmed absolutely.

Sinkler, J., concurs in this opinion.