## Fleck Estate.

Argued January 3, 1962. Before BELL, C. J., MUS-MANNO, JONES, COHEN, EAGEN and O'BRIEN, JJ.

*Ella N. Petersen,* for appellant.

*Samuel H. High, Jr.,* for appellee.

OPINION BY MR. CHIEF JUSTICE BELL, March 13, 1962:

Howard Fleck died on March 30, 1944, leaving a will in which, inter alia, he made certain bequests to named individuals including his widow and created a residuary testamentary trust of which his widow, Eva

H. Fleck, was the principal life beneficiary. The will pertinently provided:

"6. All the rest, residue and remainder of my Estate of whatsoever kind and wheresoever situate, I give, devise and bequeath unto my Executors, hereinafter named, IN TRUST, nevertheless, to invest the same and keep the same invested, and, out of the income thereof, pay unto my niece, the said Caroline F. Christie, the monthly sum of FIFTY DOLLARS ($50.00) for and during the term of her natural life and the balance of income, thereafter remaining, to be paid unto my wife, EVA, for and during the term of her natural life, but should such income be insufficient for the comfortable maintenance of my said wife, then the Trustees are authorized from time to time to make payments to her out of the principal of the Trust, even though the same be in that way reduced or exhausted. . . ."

Following the death of his widow Eva on February 11, 1957, her executor, who is the present appellant, requested the testamentary trustees under the will of Howard Fleck to prepare and file an account covering the administration of the trust. Thereafter the Orphans' Court confirmed the trustees' account and entered a decree nisi. Following oral argument on exceptions and a consideration of briefs, the Court below sustained some of the exceptions and entered a final Decree confirming absolutely its adjudication as modified by its Opinion and Decree. This appeal followed.

Appellant raises a host of questions concerning the administration of Howard Fleck's residuary testamentary trust, only some of which merit discussion.

One of appellant's principal arguments is that certain stock transactions resulted in the trust estate receiving income which should have been, but was not, distributed to his widow Eva or to her estate. In support of his argument appellant relies on paragraphs

12 and 13 of Howard Fleck's will which provide:

"12. Any investment of any and all Trust Funds, it is my Will that the Trustees shall not be limited to such investments as are authorized by law for the investment of such funds and they are authorized and permitted to invest the same in such investments as to them may seem right and proper without any liability for any loss resulting therefrom.

"13. It is my Will that any and all stock dividends or *beneficial distributions** to the Estate, as a stockholder, shall be treated as income, regardless of the effect the same may have upon the value of the security."

The stock transactions which appellant contends produce or result in dividends or beneficial distribution to the Estate, are as follows:

(1) The trustees in the course of their administration purchased for trust investment 10 shares of Westinghouse Electric Corporation 3½% Cumulative Preferred A Stock which shares were called on January 6, 1950, resulting in a total *profit* of $89.93. The Court below held that the profit received by the trustees was not a "stock dividend" or a "beneficial distribution" to the Estate, but a conversion of principal assets at a gain.

(2) The trustees held 20 shares of National Lead Company Common Stock of a par value of $10 per share. The Company changed its capital structure by reducing the par value of its shares and as a result of a three for one split the trustees *exchanged* the twenty shares which they held for 60 shares of the new Common Stock. The 60 new shares were carried at the same value as the 20 original shares. No evidence was offered to show whether any part of the new stock represented accumulated earnings. The Court below held that the new shares represented neither a "stock dividend" nor a "beneficial distribution" to the Estate.

---

* Italics throughout, ours.

(3) The trustees held 20 shares of Public Service Corporation of New Jersey. Upon a corporate reorganization these shares were exchanged for 20 shares of Public Service Electric & Gas Company and two shares of South Jersey Gas Company. The latter two shares were sold in 1951 by the trustees. The Court below held that these shares represented an exchange as a result of a corporate reorganization and were not "stock dividends" or a "beneficial distribution" to the Estate.

(4) The trustees, during the course of their trust administration, held as an investment 20 shares of United Gas Improvement Company Common Stock which, upon a reorganization of the U. G. I. they exchanged for 12 shares of Philadelphia Electric Company Common Stock and eight shares of Consumer Power Company stock. The trustees also received cash in lieu of fractional shares which they added to principal. The Court below likewise held this to be an exchange.

"We approach an interpretation of this will in the light of well settled principles. In Wanamaker Estate, 399 Pa. 274, 159 A. 2d 201, the Court said (page 279): ' ". . . The intention of the testator is the pole star in the interpretation of every will and that intention must be ascertained from a consideration of the entire will, including its scheme of distribution as well as its language, together with all the surrounding and attendant circumstances . . . [and cases cited therein]." ' ": *Heaton Estate*, 404 Pa. 360, 365, 172 A. 2d 293.

When a testator expresses his intention that certain corporate transactions or certain fiduciary transactions or that certain property received by his fiduciary shall be treated as income, his intent of course prevails, and as to these transactions and receipts the old Pennsylvania Rule of Apportionment and the "Principal and Income Act of 1947" have no application: cf.

*Jones Estate,* 377 Pa. 473, 105 A. 2d 353; *Cunningham Estate,** 395 Pa. 1, 149 A. 2d 72; *Buist's Estate,* 297 Pa. 537, 147 A. 606; *Waterhouse's Estate,* 308 Pa. 422, 162 A. 295; *Crawford Estate,** 362 Pa. 458, 67 A. 2d 124; *Ferguson Trust,* 354 Pa. 367, 47 A. 2d 245; Act of July 3, 1947, Section 2, P. L. 1283, 20 PS §3470.2.

It is clear from a reading of the pertinent provisions of testator's will that he intended and directed his widow to receive as income "stock dividends" and "beneficial distributions to the Estate" and by implication he intended stock splits, exchanges of stock, and profits from sales of stock to belong to principal.

The decree of the Orphans' Court was entered prior to *Catherwood Trust,* 405 Pa. 61, 173 A. 2d 86. If testator did not—and he did not—provide that stock splits or exchanges of stock should go to the life tenant, they belong under the decisions of this Court to principal: *Cunningham Estate,* 395 Pa., supra; *Jones Estate,* 377 Pa., supra. With respect to profit from sales (prior to *Catherwood*), the profit is apportionable, but the burden is on the life tenant to prove exactly how much of the profit was due to accumulated earnings: *Lewis Estate,* 351 Pa. 576, 580, 41 A. 2d 683; *Waterhouse's Estate,* 308 Pa. 422, 429, 162 A. 295. In the instant case, the life tenant produced no evidence to prove that any of the profit on the sales was due to an accumulation of earnings or that she was in any way entitled thereto.

Appellant also claims that Eva's Estate is entitled to $13,605.60, representing rent paid by her while she occupied an apartment *after* the sale by Howard Fleck's executors of the home which Howard had given her in his will. Relative to this real estate the will provided:

"5. I give to my wife, the right to use and occupy during her life, the home, #402 Newbold Road, Jenkin-

---

* As to the present applicable rule, see *Catherwood Trust,* infra.

town free from taxes and charges which are to be paid out of the income from my residuary estate and it is my will that my niece, CAROLINE F. CHRISTIE, shall be permitted to reside with her, free of charge if she should be unable to pay."

Appellant's claim must fail since it was admitted at bar that the executors conveyed the interest of the Estate and Eva H. Fleck likewise conveyed all her interest in the property. It necessarily follows that she thereby gave up any claim which she thereafter might have had in her right of use and occupancy and in any reimbursement for the loss thereof.

Claim is also made by appellant for $10,015.96 to reimburse Eva's Estate for sums allegedly spent by Eva for the support of herself during her lifetime. Appellant advances the argument that such sums were expended because the income from the testamentary trust was "insufficient for the comfortable maintenance" of his widow and the trustees did not invade the principal of the trust to meet this deficiency as authorized by the sixth paragraph of Howard Fleck's will. Unfortunately for appellant, the widow never claimed that the meager income she received was insufficient for her comfortable maintenance or asked the trustees for any additional sum out of principal and there is absolutely no evidence in the record to support the contention.

Appellant also claims (1) the stock of the Old York Road Realty Company on the ground that it was the property of Eva and not of Howard Fleck and (2) the sum of $193.27 representing the amount paid out of income for personal property taxes and (3) the profit realized on the sale of two vacant and unproductive parcels of real estate owned by Howard Fleck at his death. As to the stock the trustees proved that (1) the stock in fact belonged to Howard Fleck and (2) Eva H. Fleck voluntarily transferred it to the trustees. Ap-

pellant made no objection at the audit to the sum expended for personal property taxes but in any event such amount was properly charged to income: Hunter, Pa. Orphans' Court Commonplace Book (1st ed.) vol. 2, p. 889. The apportionment of the profits realized on the real estate which was decedent owned and unproductive was a matter for the sound discretion of the auditing Judge and his decision will not be reversed in the absence of a showing of a clear abuse in the exercise of that discretion: *Hostetter Estate,* 388 Pa. 339, 343-344, 131 A. 2d 360; *Crozer Estate,* 346 Pa. 446, 449-450, 31 A. 2d 147; *Levy's Estate,* 333 Pa. 440, 5 A. 2d 98.

We have examined all of appellant's objections and contentions and find no merit in any of them.

Decree affirmed. Costs to be paid by appellant.