# Jones, Appellant, *v.* Integrity Trust Co. et al.

*Practice, C. P.—Case stated—Insufficient statement of facts.*

1. A case stated will be quashed if the facts set forth are insufficient to enable the court to determine with certainty what the judgment should be.

*Trust and trustees—Life estate—Remainder—Stock dividend—Apportionment—Principal and income—Sale of rights—Corporations—Merger of corporations.*

2. Where a trust estate owns stock in a corporation which has given to shareholders the right to subscribe for additional shares, the benefit resulting therefrom must be apportioned in the same manner as an extraordinary stock dividend would be; that is, there must be allotted to the corpus of the trust sufficient thereof to maintain unimpaired the intact value of the original stock, and the life tenant must receive the rest of that benefit.

3. Under such circumstances, if the trust estate pays for, receives and retains the additional shares, then the future intact

value of all the shares held by it, will be the intact value of the shares originally held, plus the amount paid for the new shares, and distribution of later extraordinary stock dividends must be made on that basis.

4. Under such circumstances, if the trust estate sells the rights to subscribe to the additional shares, and retains the proceeds in the corpus of the trust, then the intact value of the original shares, for the purpose of future distributions, will be the original intact value, less the amount thus received.

5. On the other hand, if the life tenant receives the new shares or the proceeds of the sale of the rights to subscribe, then the intact value of the original shares, for the purpose of future distributions, will remain the same as if the right to subscribe had not been given. Under such circumstances, however, if the new shares are paid for, in whole or in part, out of money in the hands of the trustees, they will be entitled to a credit therefor on the income side of their account.

6. Where a trust estate owns shares of stock of a corporation which merges with another company which is a "going concern" and for their stock the shareholders of the latter receive shares of stock in the former, presumptively the intact value of the trust estate's shares is not altered by the transaction, even though the tangible assets received by the corporation are not equal to the value of the shares given by it to the stockholders of the other company. In the absence of proof to the contrary, it will be presumed that the "going concern" value of the merged corporation was sufficient to make up the difference.

7. In such distribution, it is a matter of no moment what may be the market value of the shares of stock, whether then held or about to be acquired; under all the situations which arise only the intact value of the shares is to be considered.

8. The rules laid down in this class of cases are applicable only where the testator or settlor has not, by his will or deed, directed a different method of distribution; where he has prescribed otherwise therein, his directions must be carried into effect in so far as they are legal.

Argued January 4, 1928. Before Moschzisker, C. J., Frazer, Walling, Simpson, Kephart, Sadler and Schaffer, JJ.

Appeal, No. 336, Jan. T., 1927, by plaintiff, from judgment of C. P. No. 5, Phila. Co., June T., 1927, No. 4764, for plaintiff, on case stated in suit of Elizabeth M. Jones

v. Integrity Trust Co. et al., trustees under deed of trust
by plaintiff to Integrity Trust Co., et al.   Reversed.

Case stated.   Before MARTIN, P. J.
The opinion of the Supreme Court states the facts.
Judgment for plaintiff.   Defendant appealed.

*Error assigned,* inter alia, was judgment, quoting it.

*Dimner Beeber,* for appellant, cited : Dickinson's Est.,
285 Pa. 449; Wilcox's Est., 66 Pa. Superior Ct. 182.

*John Stokes Adams,* for appellee, cited : Nirdlinger's
Est., 290 Pa. 457; Earp's App., 28 Pa. 368; Dickinson's
Est., 285 Pa. 449.

OPINION BY MR. JUSTICE SIMPSON, January 23, 1928 :
The question involved in this case is: How shall cer-
tain stock, received by the defendant trust estate as the
result of an extraordinary stock dividend of twenty-five
per cent, be divided between the corpus of the trust and
the life tenant who is entitled to the income thereof?
To this, the court below, appellant and appellee have
each given a different answer.   It is certain, therefore,
that two of them must be wrong; in reality all three are.
Prior to the end of 1925, the trustees had made three
separate purchases of the stock of the United Gas Im-
provement Company, the years when they were pur-
chased, the number of shares, and their intact value at
the time of the purchases, being as follows:

| 1923 | 19 shares of an intact value of | $1,487.13 |
| 1924 | 231  " | "   " | 18,523.89 |
| 1925 | 151  " | "   " | 12,529.98 |
| making together 401  " | "   " | $32,541.00 |

or $81.14 per share.   Instead of accepting this as the
intact value, when later determining how the twenty-five
per cent stock dividend should be apportioned, appellees

took the intact value of one share for each of three years, divided the sum by three, and called the quotient the intact value of each of the 401 shares. Appellant went still further; she took, in addition, the intact value of one share for each of two other years, and divided the sum by five. Neither plan is permissible. The stock dividend was payable on the entire 401 shares, and, for the purpose of apportioning it, the intact value of the shares must be the total value of all thereof at the time they were purchased, viz. $32,541, for this is the value which the corpus of the trust estate is entitled to retain intact, whenever an extraordinary stock dividend is to be apportioned between it and the life tenant. Averaging is not allowable where definite figures can be obtained.

If the facts above stated were the only relevant ones, we could readily correct the errors made, and determine the rights of the parties; but this is not so. Two other matters, governed by entirely different principles, may affect the result; yet they are joined together in the case stated, without any attempt to segregate them, though, as to one of them, the intact value of the estate's stock was necessarily reduced, and, as to the other, it may or may not have been.

It appears that, after the foregoing purchases, the Improvement Company gave to its stockholders the right to subscribe for an additional number of shares, equal to ten per cent of their holdings, at par, though the market value of the stock was in excess thereof; and, about the same time, the corporation effected a merger with the American Gas Company, by giving to the stockholders of the latter company, in lieu of their shares in it, stock of the Improvement Company, which then took over all the assets of the Gas Company. Each of these matters increased the total stock issue of the Improvement Company, and each may have reduced the book value of the individual shares; but we are not advised to what extent either did so. This renders it impossible to state

an account, from the facts given to us, and hence compels a quashing of the case stated: Ford v. Buchanan, 111 Pa. 31; Schuldt v. Reading Trust Co., 270 Pa. 360.

So far as concerns the ten per cent stock rights, the case stated shows that some of the stockholders took the new shares, but it does not disclose what was done by the estate. This is important in determining who should receive the benefit of those rights. We stated in Nirdlinger's Est., 290 Pa. 457, 466, that there was some conflict in the authorities with respect to the proper disposition of such rights. We now definitely decide that, where a corporation gives to the trustees of an estate the right to subscribe for new stock, and they avail themselves of such offer, the benefit resulting therefrom must be apportioned in the same manner as an extraordinary stock dividend would be; that is, there should be allotted to the corpus of the trust sufficient thereof to maintain unimpaired the intact value of the stock held by it, and the life tenant should receive the balance, because it represents corporate earnings which accumulated after he became entitled to all dividends at any time thereafter payable out of such accumulations.

In the present instance that rule can readily be applied to all the situations which may have resulted from the right given to the trustees to subscribe for and receive the additional shares, though, as stated, we are not advised as to what they in fact did. If they paid for, received and retained the additional forty shares, then they had the right, when apportioning the stock received on account of the later extraordinary stock dividend of twenty-five per cent, to retain, for the corpus of the trust, such a number of those later shares as would preserve the intact value of the 441 shares (401 plus 40) at $34,541, that is, the prior intact value of $32,541, plus the $2,000 paid for the forty shares, the balance, if any, belonging to the life estate. If the trustees sold the rights to subscribe to the additional shares, and retained the proceeds in the corpus of the trust, then they

held 401 shares at an intact value of $32,541, less the amount received on the sale of the rights to subscribe, and, in distributing the shares received on the extraordinary dividend of twenty-five per cent, would be entitled to retain, for the corpus of the trust, a sufficient number thereof to preserve the intact value at the sum thus ascertained, the rest of the shares belonging to the life tenant. On the other hand, if the life tenant received the additional 40 shares, or the proceeds of the sale of the rights to subscribe, then, since she is not entitled to both the penny and the cake, the present distribution should be made on the same basis as if there had been no ten per cent right to subscribe; but if, under such circumstances, the new shares were paid for, in whole or in part, out of money in the hands of the trustees, they would be entitled to a credit therefor on the income side of their account.

The effect of the merger with the American Gas Company must be determined upon different principles. It did not result in wiping out or depleting any of the assets of the United Gas Improvement Company, as was the fact in Dickinson's Est., 285 Pa. 449, and hence the rule there laid down is inapplicable here. By this transaction, the Improvement Company increased its stock issue and received therefor, as a capital charge, all the assets of the Gas Company, which was in operation as a going concern. It is not to be supposed that the Improvement Company traded its shares for a value less than those shares were worth, especially as the transaction had to be submitted to the Public Service Commission for approval, and the application therefor was required to set forth a schedule of assets and liabilities, showing not only the tangible assets to be received from the Gas Company, but also the "going concern" value of its business, so that the commission could thereby know that the total value of the assets received was at least equal to the value of the stock of the Improvement Company which was being exchanged for them. Such

approval would not have been given if the Improvement Company was paying for something which did not have an existence in fact, and, without the approval, the merger could not have been consummated. That the "going concern" value is a matter to which full weight must be given, is no longer an open question: Ben Avon Boro. v. Ohio Valley Water Co., 68 Pa. Superior Ct. 561; Same v. Same, 253 U. S. 287; Same v. Same, 271 Pa. 346. It follows that we must conclude, there being nothing in this record to the contrary, that when the Improvement Company traded its stock for shares of the Gas Company, the former received, on capital account, assets which were at least equal to the value of that stock, and hence the intact value of the estate's shares, as it existed before the merger, remained the same thereafter.

The learned president judge of the court below, when fixing the intact value of the original shares immediately after their purchase, did not fall into the same error as the parties. He accurately stated it to be $32,541; but finding nothing in the case stated which would enable him to properly consider the effect of either the ten per cent right to subscribe or the merger, he ignored them both, instead of quashing the case stated, as he should have done. As a result, he concluded that all of the 100 shares received on the twenty-five per cent extraordinary stock dividend, would have to be awarded to the corpus of the trust, but for the fact that by the case stated the market value of the shares, at the time suit was brought, was said to be $106 each. He therefore apportioned the 100 shares on the basis of this figure, giving to the corpus a sufficient number, measured by that price, to make up the difference between the intact value at the time of the purchase of the 401 shares, and their intact value after this stock dividend was declared and distributed. This, also, was error. *Market value has nothing to do with such distributions; under all the situations which arise only the*

*intact value is to be considered.* This is made very clear in Dickinson's Est., supra, where the court below made the same mistake; and we repeated our conclusion on this point in Nirdlinger's Est., supra, and in Packer's Est. (No. 1), 291 Pa. 194.

Our attention has been called to the fact that in some quarters it is supposed that our prior decisions on the subject would be applicable in cases of extraordinary stock dividends and rights to subscribe, even though the testator or settlor who created the trust, had provided a different method of distribution under such circumstances. This is incorrect; what the will or deed specifies must be carried into effect, so far as it is legal.

The judgment of the court below is reversed and the case stated is quashed.