## Buist's Estate.

538

Argued May 20, 1929. Before MOSCHZISKER, C. J., FRAZER, WALLING, SIMPSON, KEPHART, SADLER and SCHAFFER, JJ.

*Alvin L. Levi,* with him *Julius C. Levi, David Mandel, Jr.,* and *James C. Duffy,* for appellant.—The consolidation of two national banks gave the shareholders the right to receive the value of the shares of the original bank in which they were stockholders or to receive shares in the new institution; such a situation is similar to a liquidation of the corporation or a sale of the stock; therefore, an apportionment between remainderman and life tenant is required: McKeown's Est., 263 Pa. 78; Nirdlinger's Est., 290 Pa. 457; Jones v. Trust Co., 292 Pa. 149; Crawford's Est., 293 Pa. 570; Thompson's Est., 262 Pa. 278; Waterman's Est., 279 Pa. 491; Yates's Est., 281 Pa. 178.

The difference between the book value of the two hundred shares of capital stock of the Fourth Street National Bank and the two hundred shares of the capital stock of the Philadelphia National Bank, is income: Nirdlinger's Est., 290 Pa. 457; McKeown's Est., 263 Pa. 78.

*Jerome J. Rothschild,* of *Fox, Rothschild, O'Brien & Frankel,* for appellee.—Where the merger of two corporations is effected by the exchange of stock of the merged corporation for the stock of the merging cor-

poration, and there is no subsequent sale of the stock of the consolidated company, no declaration of a dividend by it or any other form of distribution of assets or earnings, the mere receipt by a trustee of the stock of the merged company in exchange for shares formerly held is not the realization by such trustee of income or earnings requiring an apportionment of the new shares of stock between life tenant and remainderman: McKeown's Est., 263 Pa. 78; Nirdlinger's Est., 290 Pa. 457; Jones v. Trust Co., 292 Pa. 149; States Trust Co. v. Heye, 224 N. Y. 242; Curtis v. Osborne, 79 Conn. 555.

OPINION BY MR. JUSTICE KEPHART, September 30, 1929:

A number of banking institutions were merged into the Phila. National Bank. The trust estate, now under consideration, held two hundred shares of stock in one of these institutions. As a result of the merger, it received two hundred shares of stock of the Philadelphia National Bank. The book value of this stock exceeds, by $10,924, the book value of the original shares at the time of testator's death. The life tenant, who is to receive the income from this trust, claims that this excess was income payable in stock or cash and immediately distributable to her; the court below denied the claim.

The Act of Congress (November 7, 1918, c. 209, section 1, 40 Stat. 1043, U. S. C. A. Title 12, section 33), empowering national banks to consolidate, permits a dissenting shareholder to elect to take "the value of the shares so held by him" in cash, or, alternatively, shares of stock of the new corporation. The rules of law governing the rights of shareholders in the merger of national banks do not differ from the rules governing shareholders in the merger of other corporations. (See Koehler v. St. Mary's Brewing Co., 228 Pa. 648; Maxler v. Freeport Bank, 275 Pa. 510.) The consolidation act gave to shareholders who dissented the right to re-

ceive in cash the value of the shares of the bank in which they were held. If shareholders consented to the merger or did not object they received that value in shares in the new institution.

The merger of two or more corporations is neither a sale nor a liquidation of corporate property, but a consolidation of properties, powers, and facilities of the constituent companies, forming a new corporate entity. Merger is a method of incorporation by two or more companies into a single corporate body. While the constituent companies are deemed dissolved, their powers and privileges, to the extent authorized by the merger contract or the law, are vested in the merged company as a new corporation. This entity is distinct from that of its constituents, but it draws its life from the act of consolidation. To ascertain what powers and privileges the new company has one must be referred to what existed in the old companies: Penna. Utilities Co. v. Pub. Ser. Com., 69 Pa. Superior Ct. 612, 618. As stated in that opinion, "......all forms of corporate enterprise are referable to the consolidated powers as they exist in the new company, ......the legality of [any] act is determined from a consideration of such specific powers and facilities as they are vested in the new company. Care should be taken to distinguish consolidation from proceedings under the Act of 1876, P. L. 33, often referred to as a "short form merger" (See York Haven W. & P. Co. v. Pub. Ser. Com., 287 Pa. 241); its operation in reality effects a sale of all the company's assets.

The new conception was not on the basis of sale, but of a merger or consolidation of assets, which is opposed to sale. To have effected a sale by the old company to the company created by merger must of necessity have meant a severance of all rights in the shareholders. But those rights that once existed as to the property of the old company prior to the merger still continue in the new company, including in addition an interest in the property of the other constituent company. If a sale

542

cannot be predicated on such acts, then a liquidation of assets is further removed from consideration. All the assets of the company involved continue intact in the new enterprise, representing a substantial value which is reflected in the price of the shares. This is not a liquidation.

From a consideration of the foregoing, it is apparent that a merger of two corporations cannot be considered as a sale of their property by the constituent companies, and the issuance of the new capital stock is merely the issuance of new evidence of ownership to the shareholders. Accepting shares of stock in the merged company is not tantamount to a distribution or division of assets which calls for an apportionment between a life tenant and remainderman.

It is urged that the trustees should have availed themselves of the option given by the act of Congress, and insisted on receiving the value of the stock, instead of the new shares, citing Thompson's Est., 262 Pa. 278, and Yates's Est., 281 Pa. 178. In the former case we said: "A trustee has no right to take sides as between life tenants and remaindermen. If he has an election of taking one of several courses, he must take, if possible, that which will not benefit one at the expense of the other." The discretion which is lodged in the trustees must be a liberal one, and as long as the life tenant's rights, or those of the remaindermen, are not prejudiced, there is no abuse of discretion. Here the trustee elected to take the two hundred shares of stock in the new company, and the $10,000 excess of value, beyond that which existed when testator died, is in the new shares of stock. The life tenant lost nothing to which she was entitled, neither did the remaindermen; consequently it cannot be held there was an abuse of discretion in electing to take the new shares of stock.

When the trustee accepted the two hundred shares of stock, the life tenant immediately claimed an apportionment of them by reason of the increase in the value of

the stock over that fixed at testator's death.  In Nird-linger's Est., 290 Pa. 457, we reviewed the authorities at length.  We there stated: "Other property of the estate cannot be required to be set apart to pay life tenants the accumulated surplus retained by the corporation.  The surplus and all other items of value remain, subject to debts, reverses, losses and decline in value because of business conditions.  As long as the stock remains in the hands of the trustee, he is not required to account to life tenants for anything except the dividends received."  We there referred to United States Trust Co. v. Heye, 224 N. Y. 242, 120 N. E. 645, 648, which is the converse of the proposition we now have before us.

The court below did not err in refusing to direct the apportionment requested by the life tenant.  The life tenant is not entitled to any division until (1) the increased value is declared as a cash dividend, or (2) distributed in the form of a stock dividend, or (3) the affairs of the bank are wound up so that assets are distributed to those entitled to receive them, or (4) there is a sale of this stock so that the connection of shareholder is entirely severed.

Decree affirmed at cost of appellant.