## Crawford Estate.

Argued May 25, 1949. Before MAXEY, C. J., LINN, STERN, PATTERSON, STEARNE and JONES, JJ.

*H. F. Stambaugh,* with him *H. Stanley Douglass,* for appellant.

*William McC. Houston,* with him *Fred C. Houston* and *Houston & Houston,* for appellee.

*Charles F. C. Arensberg* and *Thomas B. K. Ringe,* with them *Ella Graubart* and *Patterson, Crawford, Arensberg & Dunn,* for Corporate Fiduciaries Association, amicus curiæ.

OPINION BY MR. JUSTICE ALLEN M. STEARNE, June 24, 1949:

The question raised by this appeal is whether the Uniform Principal and Income Act of May 3, 1945, P. L. 416, 20 PS 3471, is unconstitutional when applied retroactively. [While the Principal and Income Act of July 3, 1947, P. L. 1283, 20 PS 3470, repealed the Act of 1945, supra, it is a substantial reënactment thereof. The Act of 1945 must be construed therefore as continuing in active operation as to all rights and liabilities incurred under it: Statutory Construction Act, May 28, 1937, P. L. 1019, Art. VI, sec. 82, 46 PS 582].

Testator died April 6, 1935. Under his will the residuary estate was placed in trust to pay the income, under spendthrift provisions, to his daughter for life. One half of the corpus or principal was passed, at the death of the daughter, under a general power of appointment of the life tenant. The other half, with all unappointed principal, was devised and bequeathed to the daughter's issue. Testator directed that all stock dividends should constitute part of the corpus or principal. The life tenant is a minor with a duly appointed guardian. A trustee ad litem for all unascertained remainder interests represents and is acting for the remaindermen. At the audit of the second account of the trustees in the Orphans' Court, it appeared that after May 3, 1945, the effective date of the Uniform Principal and Income Act, supra, and prior to the effective date of the 1947 Principal and Income Act, supra, the trustees received stock dividends from three corporations, whose stock formed part of the trust, and they also sold other corporate stock and rights to subscribe which resulted in large capital gains. Judge BOYLE, the auditing judge, in a well considered opinion, unanimously concurred in by the court in banc, decided that by long established decisions of this Court, under the Pennsylvania Rule of Apportionment, the life tenant possessed a vested right to receive, as "income", the stock dividends and a share of the capital gains (representing accumulated unpaid earnings) on sales of the stock. The award to income was approximately $75,000. There is no dispute concerning the correctness of this valuation and calculation. The court below also ruled that because these items constituted income, testator's direction that they be treated as corpus was void as violating the statute against accumulations. The trustee ad litem appealed.

The remaindermen contend that the interest of the life tenant in such accumulated unpaid corporate earnings and profits, under the Pennsylvania Rule of Ap-

portionment, is *contingent, inchoate and a mere expectancy,* which the Legislature may constitutionally modify or destroy. The life tenant, on the contrary, maintains that the interest is a vested property right which may not be eroded or extinguished. We are required, therefore, to define the *quality* of this interest.

At the time of the creation of the trust, and prior to the effective date of the Act of 1945, supra, this Court consistently applied the Pennsylvania Rule of Apportionment when distributing accumulated corporate earnings and profits *between life tenant and remainderman.* This question had no relation between the *corporation* and the trustee or beneficiaries. We also decided when this distribution should be made, i. e., when such accumulations were paid out by the corporation by an extraordinary stock or cash dividend, or when the corporate stock, being part of the trust, was sold or exchanged, or when the corporation was liquidated or merged with other corporations, and where the value of such accumulated earnings was reflected in realized cash in the sales price or constituted a portion of the value of the stock or corporate assets upon liquidation or merger. In *Nirdlinger's Estate,* 290 Pa. 457, 462, 139 A. 200, this Court, speaking through Justice KEPHART (later Chief Justice), reviewed the three doctrines of apportionment. They are: (1) the *Massachusetts Rule.* Under this rule all *cash* dividends are payable to the life tenant and all *stock* dividends to the remainderman. (This rule is conceded to be one of *convenience.* While perhaps unscientific in principle, it is understandable and easy of application). (2) the *Kentucky Rule,* sometimes termed the English Rule. (This was also a rule of convenience). Under this doctrine a dividend, whether of stock or cash, passes to the person entitled to receive income at the time the dividend is declared. (3) the *Pennsylvania or American Rule.* Under this rule, a gift of "income" in corporate stock is defined and measured.

It includes accumulated earnings, above the amount necessary to preserve the intact value of corpus. (While the rule is unquestionably difficult in *application,* nevertheless, it is, in *principle,* a just and equitable measure). The Supreme Court of Pennsylvania adopted and consistently has applied the Pennsylvania Rule since 1857: *Earp's Appeal,* 28 Pa. 368; *Nirdlinger's Estate,* supra; *Waterhouse's Estate,* 308 Pa. 422, 162 A. 295, and the many cases therein cited and those which follow them. The Legislature, in adopting the Uniform Principal and Income Act of 1945, supra, in substance, substituted the Massachusetts Rule for the Pennsylvania Rule and made the operation of the Act retroactive.

The issue is thus sharply drawn. If the decisional law of the Pennsylvania Rule of Apportionment established a vested property right in the life tenant, then the retroactive provisions of section 17 of the Act of 1945, supra, rendered the Act unconstitutional as applied to trusts created prior to its enactment. Such a provision in the statute takes income, which this Court has decided belongs to a life tenant, and passes it to the remainderman, thus contravening Art. I, sections 1 and 9 of the Constitution of Pennsylvania and the Fourteenth Amendment of the Constitution of the United States. *Brown v. Hummel,* 6 Pa. 86; *Palairet's Appeal,* 67 Pa. 479; *Willcox v. Penn Mutual Life Insurance Co.,* 357 Pa. 581, 55 A. 2d 521.

The remaindermen contend that under the Pennsylvania Rule of Apportionment, the interest of the life tenant in accumulated undeclared corporate earnings and profits is in fact contingent, inchoate and but a mere expectancy because the *quantum* of such income may differ under varying corporate financial situations. As before stated, this Court has decided that the life tenant is entitled to receive as "income", in addition to ordinary corporate cash dividends, accumulated corporate profits and earnings except where necessary to

preserve the "intact value" of principal, which he is entitled to receive when there has been a stock or cash dividend, a corporate liquidation, or a sale or distribution in kind. It is wholly immaterial in what form such accumulations appear.

A gift of an equitable life estate in *"income"* is a grant of *a vested property interest.* The Legislature may not thereafter qualify or extinguish it. Where part of the trust corpus consisted of corporate stock, this Court possessed the power, in the absence of then existing Legislative enactment, to *define and measure* what constituted or was included in the term "income". In so defining and measuring such "income", we decided what cash or property passed to the life tenant and at what time. Such "income" thus defined became a *vested* property interest. In so adjudicating the right to income between the *life tenant and remainderman,* this Court was exercising an inherent judicial power and function. It was deciding and declaring legal principles governing the ownership and possession of property. In *Gibbons's Estate,* 317 Pa. 465, 177 A. 50, we reaffirmed the principle or rule of law that *"a devise of the rents, issues and profits of the land"* passed a fee, and so defined the quality of the property interest. In *Appeal of Edwards,* 108 Pa. 283, the deed granted a share of property to *"lawfully begotten children".* Claimant in that case was not born in lawful wedlock. This Court decided that such an illegitimate individual possessed no property interest and that he could not take even though he was subsequently legitimatized by act of the Legislature. In *Klinger et al. v. Wick,* 266 Pa. 1, 109 A. 542, an owner of land on which a railroad switch was located granted the use of the land to an individual and the railroad company *"as long as said parties wish to use said switch".* We decided that the use ceased upon the death of the *individual* grantee, thus measuring and defining a property right. It was further held that the

subsequent passage of the Act of April 1, 1909, P. L. 91, increasing an interest where the word "heirs" was not used, did not enlarge such a property interest into a fee. In *Harris v. The York Mutual Insurance Company,* 50 Pa. 341, this Court defined loss by fire occasioned by "mobs or riots" used in an exclusion clause in a fire policy. We decided that since the fire was occasioned by a lawful order of Union military authorities, the fire loss did not come within the words of the exclusion clause. We have frequently defined the *quality* of estates: in fee simple, for life, for years, at will, or at sufferance. See *Bismark Building & Loan Association v. Bolster,* 92 Pa. 123; *Townsend v. Boyd,* 217 Pa. 386, 66 A. 1099; *Morgan v. Williams,* 39 Pa. Superior Ct. 580; *McHendry v. Shaffer,* 58 Pa. Superior Ct. 171; *Sutmeyer v. Thornton,* 63 Pa. Superior Ct. 607. Examples could be multiplied. It will suffice to state that if by a decision of the Supreme Court of Pennsylvania a property interest is held to be *vested,* no subsequent act of the Legislature may *divest* it.

The remaindermen strenuously contend that all interests acquired under the Pennsylvania Rule of Apportionment are "contingent, inchoate or in expectancy", which the Legislature may modify or extinguish. This is not accurate when relating to most *contingent* interests. A contingency not attached to capacity to take is so vested as to be transmissible: *Kelso v. Dickey,* 7 W. & S. 279; *Packer's Estate (No. 2),* 246 Pa. 116, 92 A. 70; *Riegel et al. v. Oliver et al.,* 352 Pa. 244, 42 A. 2d 602; *McCreary Trust,* 354 Pa. 347, 47 A. 2d 235; *Estate of Rebecca Moss,* 80 Pa. Superior Ct. 323; Restatement, Property, Section 278. Where, however, an interest is *inchoate or a mere expectancy,* the Legislature may modify or terminate it: II Cooley's Constitutional Limitation (8th Ed.) 750, 751, 752. Thus: in cases of inchoate *dower* the Legislature may modify or destroy the interest during the life of the spouse, but not *after*

the death, as then the interest becomes consummate by the death of the husband: *Melizet's Appeal,* 17 Pa. 449; *Moninger v. Ritner,* 104 Pa. 298; *Scaife v. McKee et al.,* 298 Pa. 33, 148 A. 37. *A joint tenancy* may be converted by the Legislature into a tenancy in common because during the joint tenancy *either* joint tenant can sever the tenancy by alienation or his creditors may attach and sell his interest. The right of either joint tenant to take *by survivorship* is but an expectancy: *Bambaugh v. Bambaugh,* 11 S. & R. 191; *Madden et al. v. Gosztonyi Savings and Trust Company,* 331 Pa. 476, 200 A. 2d 624; *American Oil Company v. Falconer et al.,* 136 Pa. Superior Ct. 598, 8 A. 2d 418. Legislative conversion of a *fee tail* into a fee simple also is upheld because the heir presumptive possesses but an expectancy. During the lifetime of the tenant in tail, issue of such tenant possess no estate or interest which they can alienate. Their interest is but a possibility or expectancy. See Cooley's Constitutional Limitation, supra; Vol. 19 Am. Jur. "Estates", sec. 55; Restatement, Property, section 95.

We do not accept the remaindermen's contention that the life tenant's property right is inchoate or a mere expectancy simply because the *quantum* of income may vary upon *application* of the Pennsylvania Apportionment Rule. In seeking out accumulated income and distributing it, the *amount,* or even the *existence* of such income, may depend upon varying and perhaps upon complicated corporate financial situations. The three decisions in the *King Estate,* 349 Pa. 27, 36 A. 2d 504; 355 Pa. 64, 48 A. 2d 858, and 361 Pa. 629, 66 A. 2d 68, are cited by appellant as illustrative of inchoate or expectant interests under the Pennsylvania Rule of Apportionment. In that case there was no difference in opinion concerning the fundamental principle that the life tenant possessed a vested interest in accumulated corporate earnings and profits. It concerned a complicated corporate *merger,* involving common and preferred shares. In the first case, we decided unan-

imously that the situation was merely that of *exchange* and no common stock had been given in payment of arrears of dividends on the preferred stock. But it was decided that no apportionment could be made until after a sale of exchanged stock. In the second case we decided that *all* of the stock need not be sold before there could be an apportionment. Three Justices dissented in the view that common stock included in the merger was given in *payment* of defaulted accumulated dividends on the preferred stock. In the third case, a majority decided that the intact value of corpus *had been preserved* and the life tenant was therefore entitled to certain of the accumulated corporate earnings and profits as income. The dissenting opinion was that the *intact value had been impaired.* We emphasize that no question was raised in any of the three decisions that the life tenant was not entitled to accumulated undeclared corporate earnings and profits. The sole difference in the *application* of the rule was in determining the amount due the life tenant and when it should be paid. Uncertainty as to the *quantum* of income and when it is to be received cannot convert a vested interest into a mere expectancy.

The cases concerning what are known as "Salvage Operations", have no connection with the principle herein involved. Those cases have to do with liquidation and *administration of trust assets,* which have been received in foreclosure, or the sale of and carrying charges on unproductive or insufficiently productive real estate. In the ascertainment and distribution of accumulated corporate earnings and profits, the fund is in existence, whereas in salvage operations a fund is being created. In salvaging and liquidating "frozen" assets, equitable principles must be applied in each case to determine what should be income and what should be principal. For example: a trust estate may possess a mortgage secured on real estate. On foreclosure, the real estate taken at Sheriff's sale may be valued at a

sum much less than the amount of the mortgage with interest arrearages. Upon a forced sale, such real estate may be sold at a sacrifice. The life tenant ordinarily prefers an immediate sale, even at a sacrifice, as he receives at once income, even on reduced principal, whereas the remainderman demands retention until a more advantageous price may be obtained. In unproductive real estate, or that which is insufficiently productive, the same problem is presented. In determining the equities between the parties, the Court must necessarily exercise discretion. In so acting the court is not declaring property rights but is administering or liquidating distressed trust assets. See *Nirdlinger's Estate (No. 2)*, 327 Pa. 171, 193 A. 30; *Nirdlinger's Estate*, 331 Pa. 135, 200 A. 656; *Spear's Estate*, 333 Pa. 199, 3 A. 2d 789, and *Levy's Estate*, 333 Pa. 440, 5 A. 2d 98. This principle is the basis of the decision in *Demorest et al. v. City Bank Farmers Trust Co. Trustee, et al.*, 321 U. S. 36, 64 S. Ct. 384.

Appellant asserts that no vested property right exists in a rule of law. This is true, *except where such rule of law has established a vested property interest.* Where a decision of the Supreme Court of Pennsylvania declares an interest to be vested, no retroactive statutory enactment may modify or extinguish it. On two occasions we have declared an interest such as here defined to be vested under a "rule of property", long established: *Harkness's Estate*, 283 Pa. 464, 467, 129 A. 458; *Maris's Estate*, 301 Pa. 20, 24, 151 A. 577.

While the adoption of the Uniform Principal and Income Act of 1945, supra, may have been a wise and even desirable legislative enactment, it may only be applied constitutionally to trusts created after its effective date, *as respects the ascertainment and distribution of accumulated corporate earnings and profits.*

Decree affirmed. Costs to be paid out of the corpus of the estate.