## Conway Trust

*C. Leo Sutton*, for accountants.

*William J. Henrich, Jr.*, for income beneficiaries.

*Neil W. Burd*, for remaindermen.

LEFEVER, J., June 11, 1957.—William Conway, Jr., settlor, under date of March 10, 1942, executed a deed of trust wherein he created an unfunded inter vivos

life insurance trust with the Fidelity-Philadelphia Trust Company and Robert M. Green, Esquire, as trustees. At the same time, he designated the trustees as beneficiaries of four insurance policies upon his life. The trust agreement expressly provided: (1) That trustees had no obligation to pay the premiums on the life insurance policies during settlor's lifetime; (2) ". . . that all benefits, privileges, and options accruing on the policies held hereunder during the lifetime of settlor shall be for the sole benefit of settlor"; and (3) that settlor reserved the right to add to the corpus of the trust additional policies of life insurance, cash or other property. The trust agreement provided further that the income from the trust should be payable one-half to settlor's widow, and one-fourth to each of his two daughters for their respective lives, and remainder over to their issue (the exact provisions are presently unimportant as all of the life tenants are living).

Settlor died on April 19, 1946, without having amended or revoked the deed of trust in whole or in part, and without changing the beneficiary on his life insurance policies.

The trustees collected the proceeds of the policies and invested them in securities in accordance with the broad investment powers contained in the trust agreement. Since then the trustees have received various stock dividends, stock rights and gains on sales of investments which would be apportionable between income beneficiaries and remaindermen under the Pennsylvania Intact Value Rule but which would not be apportionable under the Massachusetts Rule contained in the Uniform Principal and Income Act of May 3, 1945, P. L. 416, 20 PS §3471, as reënacted in the Principal and Income Act of July 3, 1947, P. L. 1283, 20 PS §3470 (see stipulation of the parties annexed hereto).

The first account of the trustees is before the court. It was filed because of the death on October 22, 1956, of Robert M. Green, Esquire, cotrustee.

It is now well settled in Pennsylvania that the Uniform Principal and Income Act of May 3, 1945, cannot be applied retroactively to estates wherein rights have vested prior to the effective date of the act: Crawford Estate, 362 Pa. 458; Pew Trust, 362 Pa. 468; Steele Estate, 377 Pa. 250; Jones Estate, 377 Pa. 473; Warden Trust, 382 Pa. 311. The doctrine is succinctly stated in Crawford Estate, supra, at page 464: "It will suffice to state that if by a decision of the Supreme Court of Pennsylvania a property interest is held to be vested, no subsequent act of the Legislature may *divest* it. . . . Where, however, an interest is *inchoate or a mere expectancy*, the Legislature may modify or terminate it. . . ."

The problem now before the court, therefore, resolves itself into the narrow, but novel, issue as to whether the income beneficiaries of an unfunded life insurance trust which is revocable or amendable by settlor acquire a vested interest at the date of the execution of the trust or at the date of settlor's death.

The beneficiary of a life insurance policy in which the insured reserves the right to change the beneficiary does not have a vested right therein during the lifetime of the insured: Fidelity Trust Co. v. Travelers Insurance Co., 320 Pa. 161; Knoche v. Mutual Life Insurance Company of New York, 317 Pa. 370; Riley v. Wirth, 313 Pa. 362. Such interest of the beneficiaries of the trust becomes vested upon the date of the death of settlor and not before: Brown Estate, 384 Pa. 99; Iafolla Estate, 380 Pa. 391.

In Brown Estate, supra, settlor created an inter vivos unfunded trust of life insurance policies in 1940, reserving complete control over the policies during his lifetime, providing for disposition of proceeds at his

death and giving the corporate trustee no authority over the policies during his lifetime except to act as custodian thereof. Settlor amended the trust to provide for disposition as to the same beneficiaries in 1948, after the effective date of the Estates Act of April 24, 1947, P. L. 100. Decedent died in 1953. Decedent's widow elected to take against his will and against the life insurance trust under section 11 of the Estates Act of 1947. It was held that the widow had a right to take against the trust on the theory that the rights of the beneficiaries under the life insurance contract did not become vested prior to the effective date of the Estates Act.

In Iafolla Estate, a tentative trust was created on August 7, 1947, before the effective date of the Estates Act of 1947, and settlor died in 1951. The court stated that "until the death of the settlor of a tentative trust the beneficial interest is a mere expectancy and not vested" and the widow may take against the tentative trust under section 11 of the Estates Act: McKean Estate, 366 Pa. 192.

In Pengelly Estate, 374 Pa. 358, settlor created an inter vivos funded trust wherein he reserved the right to approve during his lifetime (1) the purchase and sales of investments, and (2) the consumption of principal for settlor's benefit. The trust was for the benefit of his housekeeper. The court held that the trust was testamentary in character, and allowed the widow to take against it. The court stated, at page 363:

" '. . . Where, however, settlor in addition to the reservations above mentioned, reserves the power to control the trustee as to the details of the administration of the trust, and thus makes the trustee merely the agent of the settlor, the scheme becomes testamentary as to dispositions intended to take effect after death . . .'."

The instant case is much stronger. Here, the trust didn't come into actual existence until settlor's death. Only then did a trust res, the proceeds of life insurance payable on settlor's death, come into trustees' hands.

Following the reasoning of these cases, the death of settlor in the instant case was the positive act which fixed the rights therein and made them vested. Until settlor's death, the trustees had no duties to perform; the beneficiaries could not maintain an action against settlor if he chose to take the cash surrender value of the policies, or if he chose to change the beneficiaries thereof. Moreover, the creditors of settlor would have undoubtedly been able to reach these policies during his lifetime.

In 1945, the legislature of Pennsylvania announced the public policy of Pennsylvania with regard to apportionment. This policy was incorporated in the Uniform Principal and Income Act of May 3, 1945. The legislature enacted this statute and fixed this public policy with deliberation and care in an effort to eliminate the myriad of complexities and administrative problems in apportionment encountered under the Intact Value Rule. This public policy, so enunciated, should be followed, if possible: Vederman Estate, 78 D. & C. 207; 2 Fiduc. Rep. 596. The Supreme Court of Pennsylvania has recently indicated that the doctrine of apportionment in Pennsylvania is not to be extended beyond the areas defined in the cases: Hostetter Estate, 388 Pa. 339. It would seem to follow, therefore, that unless rights are retroactively affected, which are clearly vested, the Uniform Principal and Income Act of May 3, 1945, should be held to apply.

As appears from the foregoing, such clearly vested rights are not here involved. The rights of the beneficiaries became vested only at the death of settlor, which occurred after the effective date of the Uni-

form Principal and Income Act of 1945. A fortiori, that act applies. Therefore, no apportionment is in order and all of the questioned items constitute principal. The auditing judge so finds.

All parties agreed that the Fidelity-Philadelphia Trust Company was entitled to a fee of $250 for services rendered in the preparation of the apportionment. Under the stipulation of the parties, this is chargeable to principal, in view of the conclusions here reached.

And now, to wit, June 11, 1957, the account is confirmed nisi.