## Chamberlain Estate

*Jenkins, Bennett & Jenkins*, for accountant.
*Henry I. Einbinder*, for life tenant.
*Samuel Mangel*, guardian and trustee ad litem.

LEFEVER, J., December 4, 1959.—This trust arises under paragraph fourth of the will of James C. Chamberlain, who died November 10, 1939, whereby he gave and bequeathed unto his trustees 150 shares of American Telephone and Telegraph Company stock, "to hold and pay the income thereof unto my Grand-Niece, Dorothy K. Heuit, for and during the term of her natural life, and upon her death, to pay the principal thereof unto her children, share and share alike, if any there be, and upon failure of issue or children of the said Dorothy K. Heuit, the principal to be divided equally share and share alike, among the children of J. LeRoy Chamberlain, Sr., Grace, Betty and Peggy, and the children of J. LeRoy Chamberlain, Jr., Betty,

Peggy, Dorothea and J. LeRoy Chamberlain, the 3rd, then surviving, and the issue of such deceased children, and if there be members of both classes, they are to share per capita and not per stirpes."

The fund accounted for, comprising in the main the aforesaid shares of stock, was last awarded to accountants as surviving trustees for Dorothy K. Heuit by adjudication of Sinkler, J., dated May 5, 1944.

The purpose of the filing of the present account is that the life tenant, Dorothy K. Heuit, contends that the proceeds of the sale of rights to subscribe to convertible debenture bonds, which were issued from time to time between 1946 and 1958 by the American Telephone and Telegraph Company to trustees, as stockholders, are all income and should therefore be transferred to the income account and paid to her as life tenant. The amount of these proceeds is stated to be $3,161.59.*

All parties having any interest, vested or contingent, including, insofar as concerns certain minors and unborn and unascertained persons having a possible interest in the trust, the guardian and trustee ad litem, Samuel Mangel, Esq., who was so appointed by decree of this court, dated September 30, 1958, have had due notice of the audit and of the question whether the proceeds from the sale of various rights to subscribe to convertible debenture bonds, as hereinabove mentioned, are apportionable between principal and income, or whether all such are to be retained as part of the corpus of the estate as accountants have contended and treated the same.

---

* Actually this amount appears to be only $2,645.91 because $515.63, proceeds of $500 United States Treasury bond, was inadvertently included in computing this amount. See page 6 of the account.

The record is sketchy with regard to these rights. It appears that American Telephone and Telegraph Company has used this method of raising capital on a number of occasions. The rights were distributed to the shareholders on the basis of the number of shares they own. The holder of a specified number of rights was afforded the opportunity to purchase a debenture bond at a cost of $100. The owner of this debenture bond was in turn given the right to convert the bond into one share of common stock of the corporation upon surrender of the bond and payment of a specified price, e.g., $50. The holder of such a debenture bond is a creditor of the corporation, and not a shareholder. The surplus of the corporation is not affected by the issuance of the rights. See letter, dated October 24, 1958, from the Assistant Treasurer of American Telephone and Telegraph Company addressed to the guardian and trustee ad litem, and attached to his report.

Proof was presented at the audit that the corporate fiduciaries in the Philadelphia area regularly treat as principal the proceeds of the sale of rights to subscribe to convertible debenture bonds, and do not ordinarily apportion such rights under the "Pennsylvania Rule of Apportionment". Therefore, to require apportionment of the rights at issue would change the general practice of trust administration in this area.

There appears to be no appellate court decision in Pennsylvania directing apportionment of the sale of rights to subscribe to debenture bonds. However, in French Estate, 84 D. & C. 525, President Judge Holland, of the Montgomery County Orphans' Court, directed the apportionment of rights to subscribe to convertible debenture bonds of the American Telephone and Telegraph Company on the theory that rights to subscribe to such bonds were similar to rights to subscribe to stock, and therefore apportionable. In Fownes Trust, 3 D. & C. 2d 637, Judge Rahauser of the Alle-

gheny County Orphans' Court made a similar ruling in an adjudication, to which there appear to have been no exceptions, stating at page 656: "Since the intact value . . . would not be impaired, the proceeds of the sale should be credited to the life tenant. The proceeds of the sale of such rights [to subscribe to convertible debentures of the Phillips Petroleum Company] are apportionable on the same basis as stock or other extraordinary dividends: Waterhouse's Estate, 308 Pa. 422. *Accountants now agree that the $125 was income.*" (Italics supplied).

In the recent cases of Cunningham Estate, 395 Pa. 1, and Harvey Estate, 395 Pa. 62, the Supreme Court ruled that the "Pennsylvania Rule of Apportionment" would "be restricted to only those situations judicially recognized as apportionable events or occasions prior to the legislative abrogation of the Rule . . .": Cunningham Estate, supra, p. 7. In Cunningham Estate, the court further stated at page 7, et seq.: "An examination of all the decisions of this Court on the subject of apportionment indicates that the Rule was applied and apportionment decreed *only* in the following situations: '(1) the distribution by the corporation of an extraordinary cash or stock dividend, or (2) the liquidation of the corporation, or (3) a sale of the stock by the trustees, or (4) the issuance of *stock rights* (citing cases)': Jones Estate, 377 Pa. 473, 476, 105 A. 2d 353, 354." (Italics supplied.)

It is clear from the foregoing that: (1) There is no appellate court decision authorizing or directing the apportionment of rights to subscribe to convertible debenture bonds between principal and income under the "Pennsylvania Rule of Apportionment"; (2) the Pennsylvania Supreme Court in Cunningham Estate, supra, and Harvey Estate, supra, have plainly stated that the "Pennsylvania Rule of Apportionment" should not be extended to situations other than those

upon which it precisely ruled prior to the enactment of the Uniform Principal and Income Act of May 3, 1945, P. L. 416, repealed by the Principal and Income Act of July 3, 1947, P. L. 1283; and (3) the owner of convertible debenture bonds is a creditor of the corporation, and not a shareholder thereof. In view of the foregoing, the "Pennsylvania Rule of Apportionment," which applies to rights to subscribe to stocks should not be extended to apply to rights to subscribe to convertible debenture bonds.

In view of the foregoing, the claim of Dorothy K. Heuit, life tenant, is dismissed.

Even if the "Pennsylvania Rule of Apportionment" were to be extended to rights to subscribe to convertible debenture bonds, the rule should not be applied in the instant case because no evidence has been presented to show that the rights represent an accumulation of income. A prerequisite under this rule is that to be apportionable an item must originate from accumulation of earnings.

"But where the greater value is due to the stock's earning power, good will, or its intrinsic, speculative, or enhanced market value, all the proceeds are part of the corpus and belong to the remainderman . . .

"When the trustees sell stock rights, the presumption is that the proceeds derived therefrom represent capital assets of the estate, and the burden of showing the contrary rests on those who assert a claim to the fund or part of it": Waterhouse's Estate, 308 Pa. 422, 429, 430.

Hence, there is nothing in the instant case upon which to base a finding that the rights to subscribe to the convertible debenture bonds at issue constituted income. This is in contrast to Fownes Estate, supra, where, as the court noted, the accountants *agreed* that the proceeds of rights to subscribe to stock was *income* . . .

272

And now, to wit, December 4, 1959, the account is confirmed nisi.