## Stroud Estate

■■■■■■

*H. Paul Smith* and *James M. Brittain*, for accountant.

*Duane, Morris & Heckscher, William White, Jr.,* and *Henry Stuckert Miller*, for claimants.

TAXIS, P. J., August 26, 1960.—The reason or purpose for the filing of the account now before the court is the death of William D. Stroud on August 18, 1959, at which time the inter vivos trust terminated. . . .

A question has been presented as to what rules of apportionment apply to this inter vivos trust. The trust was created with the nominal sum of $100 on April 13, 1943, but a substantial portion of the trust assets arise from distribution under the will of the settlor, who died on May 10, 1945, seven days after the Uniform Principal and Income Act of 1945 became effective.

The trust arises under a revocable inter vivos deed dated April 13, 1943, between Margaret P. Stroud, settlor, and Provident Trust Company, now Provident Tradesmens Bank and Trust Company, and William D. Stroud, trustees.

By the terms of this trust, settlor reserved to herself the income for life. Following her death, she provided for the payment out of principal of certain pecuniary gifts, then directed that the balance of principal be held in further trust to pay the net income to her son, William D. Stroud, for life. The trust was to terminate upon the happening of the last of three specified events. One of these, and the one which was, in fact, the last to happen, was the death of William D. Stroud on August 18, 1959.

Settlor funded this inter vivos trust with the sum of $100 at the time of execution of the deed on April 13, 1943. By item fourth of the deed of trust she reserved the right to herself and all beneficiaries under the trust to make subsequent additions to the corpus, such additions to be held subject to the provisions of the deed.

By item second of her will, which was also executed April 13, 1943, settlor left her entire residuary estate to the trustees under her inter vivos trust, ". . . to be held, applied and ultimately paid over in accordance with the terms of said deed of trust."

Margaret P. Stroud died on May 10, 1945, and the sum of $166,323.53 was awarded to the trustees by adjudication of Holland, P. J., dated November 27, 1946, in accordance with the provisions of her will. The present accounting has been filed by Provident Tradesmens Bank and Trust Company, surviving trustee, because of the termination of the trust following the death of William D. Stroud, cotrustee and life tenant.

The Uniform Principal and Income Act of May 3, 1945, P. L. 416, 20 PS §3471, which made important changes in the rules governing apportionment between life tenants and remaindermen, became effective on May 3, 1945, seven days prior to the death of Margaret P. Stroud.

The question then becomes: Does the Uniform Principal and Income Act of 1945 or the earlier rules of apportionment control apportionments from the principal so added?

The question is controlled by Crawford Estate, 362 Pa. 458, and Warden Trust, 382 Pa. 311. In Crawford Estate, the court, at page 462, stated the issue as follows:

"If the decisional law of the Pennsylvania Rule of Apportionment established a vested property right in

the life tenant, then the retroactive provisions of section 17 of the Act of 1945, supra, rendered the act unconstitutional as applied to trusts created prior to its enactment. Such a provision in the statute takes income, which this Court has decided belongs to a life tenant, and passes it to the remainderman, thus contravening Art. I, sections 1 and 9 of the Constitution of Pennsylvania and the Fourteenth Amendment of the Constitution of the United States."

The Crawford decision stated the rule that a gift of an equitable life interest in income is a grant of a vested property interest, and that the legislature may not thereafter qualify or extinguish it.

An examination of the nature and extent of the interest which vests upon the gift of an equitable life estate, clearly establishes the fact that this constitutional protection also extends to property which is made subject to the estate thereafter.

In Warden Trust, 382 Pa. 311, the Supreme Court followed and reaffirmed the holding in the Crawford Estate, even as regards investments made in such trusts after the effective date of this statute and stated that the interest of a life tenant is vested when a decedent or settlor creates the trust and that "Uncertainty as to quantum of income, and when it is to be received, cannot convert a vested interest into a mere expectancy." (Page 315). Stated in another way, Warden Trust ruled that a life estate is a vested interest in the trust res, not in specific property constituting that res, and that this interest which vests when the trust is created, is unaffected by subsequent events which alter the composition of the res.

At page 315, the court stated:

"The interest of a life tenant is vested when a decedent or settlor *creates the trust.* It would indeed be a novel legal principle that such vested interests could not be constitutionally extinguished as to securities

already forming part of the trust res, but could be so extinguished respecting securities *subsequently* purchased with *trust funds.*"

Although the present case differs from Warden Trust to the extent that here new trust property was added to the corpus by gift rather than by purchase, the reasoning of Crawford Estate, reaffirmed by Warden Trust, is still applicable and controlling.

The life tenant has a vested interest in the trust res whatever its constituents might be at any given time, rather than in any specific property constituting that res. The possibility of quantitative changes in the income-producing fund is inherent in such an interest. The quality of the interest is effected by the original creation thereof and remains constant. The quantity or value of the interest necessarily varies from time to time as the result of any number of factors. The latter has no effect upon the former. There is no logical reason why it should. The estate which the life tenant possesses at any particular time exists, and is fully vested from the moment the trust is created, because this interest is not tied to a specific quantum of property.

A further and perhaps a more persuasive reason exists demonstrating that the Uniform Principal and Income Act of May 3, 1945, does not control this trust. Section 2 of the 1945 Act permits a settlor to retain the Pennsylvania rule if he so wishes.

Section 2 of the Uniform Principal and Income Act of 1945, in part, provides as follows:

". . . the person establishing the principal may himself direct the manner of ascertainment of income and principal and the apportionment of receipts and expenses or grant discretion to the trustee or other person to do so, and such provision and direction, where not otherwise contrary to law, shall control notwithstanding this act."

By virtue of this provision, Margaret P. Stroud was given the discretionary right to retain the Pennsylvania rule for apportionments arising from the testamentary addition to her inter vivos trust. The question then becomes: Does her will reveal such an intention to do so?

The will of Margaret P. Stroud was executed April 13, 1943, the same date as her deed of trust. Item second of this will gives her residuary estate to the trustees under the deed of trust ". . . to be held, applied and ultimately paid over in accordance with the terms of said deed of trust." Since apportionments to William D. Stroud under this deed were then governed by the Pennsylvania rule, it is clear that Mrs. Stroud's testamentary intent was that apportionments arising from principal added by her will should also be governed by that rule.

The passage of the Uniform Principal and Income Act of 1945 gave Mrs. Stroud the right to select any of a number of apportionment rules to govern the principal passing under item second of her will and the principal already transferred in trust. The passage of the act could not itself change the apportionment rule then governing the trust corpus because of the existence of previously vested interests. Therefore, the provision in item second of the will that the principal passing thereunder was to be held in accordance with the terms of the deed of trust could only mean that the Pennsylvania rule was still to be applied unless there was an express amendment to the deed specifying another rule or giving it another effective date. The fact that Mrs. Stroud did not amend her deed makes it plain that she did not wish to adopt a different apportionment rule. She intended the Pennsylvania rule to apply when her will and deed of trust were executed and this intention remained unchanged at her death.

Two lower court cases decided since Warden Trust should be mentioned: Conway Trust, 9 D. & C. 2d 385, and Kister Trust, 16 D. & C. 2d 688. In Conway Trust, the lower court held that apportionments under a revocable unfunded life insurance trust created in 1942 by a settlor who died in 1946, were governed by the Uniform Principal and Income Act of 1945. The court there was careful, however, to base its decision upon the fact that no vested rights existed until the death of the settlor. Only then in the opinion of the Philadelphia Orphans' Court did a trust res (the proceeds of life insurance payable at settlor's death) come into the trustee's hands. Kister Trust, similar to Conway Trust, reached a similar result and relied upon Conway Trust in so doing. I consider those cases completely distinguishable, for, in the present trust, a res did exist prior to the enactment of the Principal and Income Act of 1945, and the interest of the life beneficiary vested before the effective date of that act. Moreover, the revocability of the present trust did not prevent the vesting of the interest of the life beneficiary: Mason Estate, 395 Pa. 485; Dolan's Estate, 279 Pa. 582.

I conclude, therefore, that all apportionments due the estate of the deceased life tenant must therefore be determined under the Pennsylvania Rule, which was the law applicable. . . .

And now, August 26, 1960, the adjudication is confirmed nisi.